UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMBERTO I. MIRANDA,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND MADDEN et al.,<br><br>Defendants. | Case No.: 3:19-cv-01605-LAB-RBM<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL**<br><br>**[Doc. 3.]** |

## I. INTRODUCTION

Plaintiff HUMBERTO I. MIRANDA ("Plaintiff"), a California prisoner proceeding *in pro per* and *in forma pauperis*, has filed a Motion to Appoint Counsel (the "Motion") pursuant to 28 U.S.C. § 1915(e)(1)[1]. The grounds for the Motion are that: Plaintiff is unable to employ counsel; the issues involved in this matter are complex; and it is difficult for Plaintiff to understand how to further proceed; serious and complex discovery proceedings are necessary; Plaintiff's access to legal books and materials is limited due to his

---

[1] Although Plaintiff cites 28 U.S.C. § 1915(d) in support of his Motion, the statute governing the appointment of counsel to pro se litigants is found at 28 U.S.C. § 1915(e)(1). It appears Plaintiff may have used a form motion containing an outdated citation. Given the policy of liberal construction of pro se prisoners' pleadings, *see Hebbe v. Pliler*, 627 F.3d 338, 342 & n. 7 (9th Cir. 2010), the Court construes Plaintiff's request as a motion pursuant to 28 U.S.C. § 1915(e)(1).

1

incarceration; Plaintiff has very little legal knowledge or experience; and, the interests of justice and judicial economy are best served by the appointment of counsel. (Doc. 3, at 3-4.)

## II. BACKGROUND

Plaintiff has filed a lawsuit pursuant to 42 U.S.C. § 1983 against several California Department of Corrections and Rehabilitation employees working at Centinela State Prison ("Centinela") and Pelican Bay State Prison ("Pelican Bay"). (Doc. 1.) Plaintiff alleges that on August 22, 2015 during a visit with his girlfriend in the Facility C visiting room at Centinela, a portion of the ceiling collapsed on his head, face, neck, and back. (Doc. 1, at 14-15.) Plaintiff allegedly asked Defendants Ramirez and Flores (correctional officers assigned to the visiting room) for medical aid, but Ramirez and Flores laughed and called Plaintiff a liar. (Doc. 1, at 17-18.) When Ramirez and Flores eventually called medical staff, the responding nurse Defendant John Doe told Plaintiff—without examining him—that his pain would subside and that he would be seen the next day. (Doc. 1, at 19.) Additionally, an unnamed staff member informed Plaintiff that Defendant Warden Raymond Madden would be notified of the incident and Defendant Health Care CEO Kevin Reilly would provide medical care. (Doc. 1, at 19.) Despite these assurances, Plaintiff did not receive proper care for his injuries until his transfer to Calipatria State Prison ("Calipatria") more than a year later. (Doc. 1, at 21-22.) X-rays taken at Calipatria on November 22, 2016 allegedly showed a predisposition to rotator cuff injury. (Doc. 1, at 22.)

After a 2017 transfer to Pelican Bay, Plaintiff came under the care of Defendant Dr. Nancy Adam. (Doc. 1, at 22.) Plaintiff allegedly complained to Dr. Adam about his continually-worsening shoulder injury, which now comprised a limited range of motion and severe pain, but she denied him physical therapy, an X-ray, and an MRI. (Doc. 1, at 22.) Two years passed before Dr. Adam ordered an MRI, the results of which showed "rotator cuff tendonitis with an abnormal high signal within the superior labrum. Impression: Torn labrum with associated cyst, AC Joint arthropathy with lateral

2

downsloping acromion." (Doc. 1, at 22-23.) Although Plaintiff eventually received surgery, he will not regain function in his right arm "for another year if ever." (Doc. 1, at 23.) Plaintiff alleges Eighth Amendment causes of action against Flores, Ramirez, and Madden for their failure to protect Plaintiff against the ceiling collapse, and against all named defendants for their failure to provide adequate medical care. (*See* Doc. 1.) Plaintiff seeks compensatory damages in the amount of $250,000, punitive damages in the amount of $100,000 against each defendant, and a declaration that the defendants' acts and omissions violated Plaintiff's constitutional rights. (Doc. 1, at 24-25.)

### III. APPLICABLE LAW

Generally, a person has no right to counsel in civil actions. *See Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). However, a court may under "exceptional circumstances" appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1). *Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004), *cert. denied sub nom. Gerber v. Agyeman*, 545 U.S. 1128 (2005). When determining whether "exceptional circumstances" exist, a court must consider "the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983). Neither of these considerations is dispositive but instead must be viewed together. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

Only "rarely" will a federal court find a case to be so complex that it is appropriate to appoint counsel for a civil litigant who faces no loss of liberty in the controversy at hand. *See Dotson v. Doctor*, 2014 U.S. Dist. LEXIS 72791, *1 n.1 (E.D. Cal. May 28, 2014) ("[c]ounsel is appointed in civil cases such as this only rarely, if exceptional circumstances exist"); *United States v. Melluzzo*, 2010 U.S. Dist. LEXIS 53053, *3 (D. Ariz. May 3, 2010) ("appointment of counsel in a civil case is rarely invoked . . . "); *see also Schwartzmiller v. Roberts*, 1994 U.S. Dist. LEXIS 1620 *3 n.1 (D. Or. Feb. 11, 1994) ("[i]t is extremely rare that indigent civil defendants are appointed counsel in judicial proceedings").

///

## IV. DISCUSSION

Here, the Court does not find that "exceptional circumstances" exist to justify the appointment of counsel at this time. *Agyeman*, 390 F.3d at 1103. It is difficult to determine Plaintiff's likelihood of success on the merits of his claims because litigation is only in the pleading stage. However, if Plaintiff produces evidence to support the allegations in the Complaint, it is possible he could succeed. If the case proceeds beyond summary judgment, the Court would be in a better position to determine Plaintiff's likelihood of success on the merits.

Furthermore, Plaintiff has shown the ability to articulate his claims pro se in light of the complexity of legal issues involved. *Weygandt*, 718 F.2d at 954. Plaintiff claims violations of the Eighth Amendment tied to the collapse of a ceiling at a Centinela visiting room and subsequent lack of medical care to treat his injuries. (Doc. 1.) His Complaint is written clearly and is capable of being understood, notwithstanding the fact he is incarcerated and has very little legal knowledge or experience.

Given the early stage of the litigation and Plaintiff's ability to clearly articulate his claims pro se, the Court does not find that exceptional circumstances exist to justify the appointment of counsel at this time. *Wilborn*, 789 F.2d at 1331. To the extent this case proceeds beyond summary judgment, the Court would consider a future motion for appointment of trial counsel.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Appoint Counsel is **DENIED**, without prejudice.

DATE: September 5, 2019

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE

4