UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMBERTO I. MIRANDA, CDCR #AU-3793,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND MADDEN, Warden; KEVIN REILLY, Health Care CEO; RAMIREZ, Correctional Officer; FLORES, Correctional Officer; NANCY ADAM, M.D.; JOHN DOE, Nurse,<br><br>Defendants. | Case No.: 3:19-cv-01605-LAB-RBM<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**AND**<br><br>**2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND § 1915A(b)** |

Plaintiff, Humberto I. Miranda, while incarcerated at Pelican Bay State Prison ("PBSP") in Crescent City, California, filed this civil rights action pursuant to 42 U.S.C. § 1983. (*See* Compl., ECF No. 1.) Miranda seeks hold both Centinela ("CEN") and PBSP correctional and medical officials liable for injuries he claims to have sustained when part of a visiting room ceiling collapsed on him while he was incarcerated at CEN on August 22, 2015. (*Id.* at 3.)

///

Miranda did not prepay the civil filing fee required by 28 U.S.C. § 1914(a), but has instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

## I. IFP Motion

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). However, prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Miranda has submitted a copy of his CDCR Inmate Statement Report as well as a Prison Certificate completed by a trust account official at PBSP (ECF No. 2). *See* 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show that while he carried an average monthly balance of $5.80, and had $5.78 in average monthly deposits to his trust account for the 6-months preceding the filing of this action, he maintained an available balance of only $.09 at the time of filing. (*See* ECF No. 2 at 4, 5.)

Therefore, the Court **GRANTS** Miranda's Motion to Proceed IFP (ECF No. 2), but declines to exact the initial $1.16 initial filing fee assessed pursuant to 28 U.S.C. § 1915(b)(1) because his prison certificates indicates he may currently have "no means to pay it." *Bruce*, 136 S. Ct. at 629. Instead, the Court will direct the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), or his designee, to collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

**II. Screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

A. <u>Standard of Review</u>

Because Miranda is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford*

*Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

While the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

"Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

B. <u>Factual Allegations</u>

On August 22, 2015, at approximately 10 a.m., Miranda was in CEN's "C" Facility visiting room seated at a table with his girlfriend, Veronica Adame, when a "wet and heavy object hit Adame on the top of her head." (Compl. at 14 ¶¶ 15, 18.) "Almost immediately, … more wet and heavy white objects," water, and debris that "smelled of mildew" fell

4

from the ceiling above and struck both of them on the tops of their heads, neck, back, and shoulders. (*Id.* at 14-16, ¶¶ 19-22, 27-30.) Surprised and fearful, both Miranda and Adame "sought refuge" under the table, and then "crawled out of harm's way." (*Id.* at 15 ¶¶ 14-15.) Defendant Correctional Officers Flores and Ramirez, who were assigned to the visiting room that day, informed Miranda that part of the ceiling had collapsed, and both "were laughing." (*Id.* ¶¶ 25-26.)

Ramirez and Flores requested medical personnel examine Adame for injuries, and she was escorted to the visiting room front desk "where only visitors were allowed." (*Id.* at 17 ¶¶ 36-37.) "At this time [Miranda] was experiencing an aching, warm, and heavy pulling on his right shoulder." (*Id.* at 18 ¶ 41.) When no medical staff arrived to provide him aid, Miranda asked Ramirez if he too would be examined. (*Id.* at 17-18 ¶¶ 38-39.) Ramirez sarcastically asked, "Are you serious?" and then both he and Flores warned that if Miranda wished to seek medical attention "his visit would be over." (*Id.* at 18 ¶¶ 40-41.) Miranda objected on grounds of fairness, persisted, and "medical staff was called." (*Id.* ¶¶ 43-44.)

"[A]fter several minutes," Defendant John Doe, a nurse, responded and Miranda was escorted to the search area for inmates. (*Id.* at 18 ¶¶ 44-45.) He reported right shoulder pain and an irritated left eye. (*Id.* ¶ 46.) Both Flores and Ramirez again "began to laugh," "call[ed] him a liar," and stated that "if he was going to fake an injury he needed to get the correct side." (*Id.* at 18-19 ¶¶ 47-48.) Miranda "expressed to Defendants Flores, Ramirez, and Doe that he was not faking and his right shoulder felt out of place," but without examining him further, Doe "reassured him that the pain would go away," indicated he would "write an injury report," and told Miranda he "would be seen by medical staff the following day." (*Id.* at 19 ¶¶ 49-50.)

Miranda was permitted to return to the visiting room and was reunited with Adame. (*Id.* at 19 ¶¶ 51-52.) Ten minutes later, a "top prison official, possibly a Captain," arrived and spoke to Miranda and Adame. (*Id.* ¶¶ 53-54.) This unidentified official also claimed Warden Raymond Madden, and CEN's "medical staff, including Defendant Kevin Reilly,

the "Health Care CEO," "had been notified of the incident," and assured Miranda he would "receive all the medical aid he needed." (*Id.* at 19-20 ¶ 54.)

When Miranda did not automatically receive follow-up medical care the day after, he submitted three "sick call slips." (*Id.* at 20 ¶¶ 55-56.) He attaches as an exhibit one CDC 7362 "Health Care Services Request Form," dated September 6, 2015, in which he reported "bad pain on [his] shoulders and neck," irritated eyes, and a migraine headache. (*Id.* at 28-32.) In response, Miranda was examined by F. Manaig, RN, who on September 8, 2015, documented his report of bilateral shoulder pain, tenderness, and eye irritation, prescribed an ice pack per "orders received by phone from POC" and referred him to Dr. Seeley.[2] (*Id.* at 30.)

Miranda received an x-ray on his right shoulder a year later, after he was transferred to Calipatria State Prison. (*Id.* at 21-22 ¶ 65 & Ex. C at 36.)[3] He was again transferred to the SHU in Corcoran State Prison, where he continued to complain about his right shoulder,[4] and in 2017 was transferred to PBSP, where he was treated by Defendant Nancy Adam, M.D., whom he claims initially denied him physical therapy and x-rays, and classified his injuries as "minor." (*Id.* at 22 ¶ 20.)

---

[2] Neither Manaig nor Seeley are named as Defendants.

[3] Miranda's November 22, 2016 x-ray, ordered by D. Hjerpe, MD, and attached as Exhibit C, revealed only "mild degenerative changes … present at the acromioclavical joint," which "may predispose the patient to rotator cuff injury," but "[n]o acute fracture or dislocation." (Compl. at 22 ¶ 66 & Ex. C at 36.)

[4] Miranda attaches a California Correctional Health Care Service Encounter Form entitled "Musculoskeltal Complaint (Non-Traumatic)," dated June 15, 2017, which includes complaints of "wrist, shoulder, and back pain," and reports an injury to his left wrist due to a fall in his cell on 6/10/17. (Compl., Ex. D at 38-40.) S. Ramirez, RN, refilled Miranda's prescription for salsalate, prescribed Naproxyn, instructed him to avoid strenuous exercise, and noted he had been examined by Dr. Gill on 6/7/17 for right shoulder and back pain, and had "PT to be scheduled." (*Id.* at 40.) Neither Ramirez nor Gill are named as Defendants.

Dr. Adam eventually requested an MRI of his right shoulder, however, and one was performed on December 13, 2018. (*Id.* ¶ 71 & Ex. F at 45.) Miranda's MRI Report indicates he also had a shoulder x-ray on November 7, 2018. (*Id.* at 45.) On March 21, 2019, Miranda was referred to an orthopedic surgeon, Richard N. Cross, M.D.,[5] who reviewed the MRI, and reported that it "reveal[ed] what appear to be a significant finding for rotator cuff tendinosis but without tear," as well as a "superior labral ('SLAP') tear with a cyst." (*Id.*, Ex. G at 52-53.)

On May 31, 2019, Cross successfully performed arthroscopic surgery on Miranda's right shoulder to repair the SLAP tear and address "degenerative changes in his distal clavicle causing impingement." (*Id.* at 22-23 ¶ 72 & Ex. G at 47.) Miranda "is still recovering from [that] surgery," and claims he "will not have full function of his right arm for another year[,] if ever." (*Id.* at 23 ¶ 75.)

Based on these facts, Miranda claims Defendants Madden, Reilly, Flores, Ramirez, Doe, and Adams all violated his Eighth Amendment rights—either by exposing him to a dangerous condition that caused him harm, or by delaying and/or denying him adequate medical care with respect to his injuries. (*Id.* at 23-24, ¶¶ 77-79.)

C. <u>Dangerous Condition Claims</u>

First, to the extent Miranda contends Warden Madden and Correctional Officers Flores and Reilly violated his rights by "failing to properly maintain, repair, inspect, monitor, supervise, and report hazardous and dangerous conditions in the prison's visiting room," *see* Compl., at 17 ¶ 35, he fails to allege a plausible cruel and unusual punishments claim. *See Iqbal*, 556 U.S. at 678; *Watison*, 668 F.3d at 1112 (citing 28 U.S.C. § 1915(e)(2)(B)(ii)); *Wilhelm*, 680 F.3d at 1121 (citing 28 U.S.C. § 1915A).

In order to sustain an Eighth Amendment claim, Miranda must "objectively show that he was deprived of something 'sufficiently serious,' and make a subjective showing

---

[5] Dr. Cross is also not named as a Defendant.

that the deprivation occurred with deliberate indifference to [his] health or safety." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (citations omitted).

To satisfy the objective component, Miranda may base his claim on allegations that Madden, Flores, and Reilly were all aware of the risk posed by the visiting room ceiling because the danger was obvious. *Id.* at 1152. However, the circumstances, nature, and duration of the condition alleged to have been dangerous are critical in determining whether the risk posed by it is "grave enough" to constitute cruel and unusual punishment. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). As to the Eighth Amendment's subjective component, deliberate indifference also requires the allegation of facts sufficient to plausibly show "prison officials were aware of a 'substantial risk of serious harm' to [the] inmate's health or safety, and that there was no reasonable justification for the deprivation, in spite of that risk." *Thomas*, 611 F.3d at 1150 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 844 (1994)); *Iqbal*, 556 U.S. at 678. In other words, Miranda's Complaint must also contain sufficient factual matter which allows the court to draw the reasonable inference that each prison official he seeks to hold liable acted "with a sufficiently culpable state of mind." *Johnson*, 217 F.3d at 731 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *Iqbal*, 556 U.S. at 678. It doesn't.

Instead, Miranda claims only that a "disintegrating" ceiling "does not occur suddenly," and therefore, Officers Flores and Ramirez, who had been assigned to the C Facility visiting room for a month prior to its collapse "were or should have been aware of the maintenance problems." (*See* Compl. at 16 ¶¶ 31-32.) As to Warden Madden, Miranda does not allege that he was actually aware of the ceiling's condition at all, but only that he was "in control of the property," and therefore, necessarily failed in his duty to "warn" and "protect him." (*Id.* at 16-17 ¶¶ 33-34.)

These conclusory allegations, without more, are insufficient to show that the visiting room ceiling constituted an objectively obvious danger, or that it posed a substantial risk of serious harm to Miranda at the time of its collapse. *See Thomas*, 611 F.3d at 1152; *Johnson*, 217 F.3d at 731. Many courts have concluded that "poorly maintained surfaces,

wet floors, and leaky roofs" do not generally pose a substantial risk of serious harm, and are instead claims fundamentally sounding in negligence—which is insufficient to violate the Eighth Amendment as a matter of law. *See Pauley v. California*, No. 2:18-CV-2595 KJN P, 2018 WL 5920780, at *4 n.1 (E.D. Cal. Nov. 13, 2018) (collecting cases). "Courts have reached this conclusion, even where the hazard has existed, and been known to prison officials for years, and where the prisoner was required to use the dangerous location, such as a bathroom." *Id.* at *4 (citing cases).

Miranda's allegations are also insufficient to plausibly show that Madden, Flores, or Ramirez acted with deliberate indifference to his safety. *See Farmer*, 511 U.S. at 839-40 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in [Supreme Court] cases, and [the Court has] adopt[ed] it as the test for 'deliberate indifference' under the Eighth Amendment."); *Wilson*, 501 U.S. at 302-03; *Robinson v. Prunty*, 249 F.3d 862, 854 (9th Cir. 2001) (to be deliberately indifferent in violation of the Eighth Amendment, prison officials must both know of and consciously disregard an 'excessive risk to [a prisoner's] health or safety.'") (quoting *Farmer*, 511 U.S. at 834, 837); *see also Shannon v. Vannoy*, No. CV 15-446-SDD-RLB, 2016 WL 1559583, at *3 (M.D. La. Apr. 18, 2016) ("[A]llegations that the jailers do not fix leaks ... fall short of establishing an excessive risk to inmate health or safety, and do not establish that jail officials knowingly disregarded any such risk."), *aff'd*, 682 F. App'x 283 (5th Cir. 2017).

D. <u>Inadequate Medical Care Claims</u>

Second, to the extent Miranda contends Defendants Flores, Ramirez, Nurse Doe, and Dr. Adams all failed to provide him with adequate medical care with respect to the shoulder injuries he claims to have sustained on August 22, 2015, he also fails to allege a plausible Eighth Amendment claim. *See Iqbal*, 556 U.S. at 678; *Watison*, 668 F.3d at 1112 (citing 28 U.S.C. § 1915(e)(2)(B)(ii)); *Wilhelm*, 680 F.3d at 1121 (citing 28 U.S.C. § 1915A).

A prisoner's claim of inadequate medical care also does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to

serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two part test for deliberate indifference requires Miranda to plead facts sufficient to show (1) "a 'serious medical need' by demonstrating that failure to treat [his] condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

"Serious medical needs can relate to 'physical, dental and mental health.'" *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)). But prison officials do not act in a deliberately indifferent manner unless they "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

While Miranda's allegations as to the seriousness of his need for immediate medical attention on August 22, 2015 are minimal, the Court will assume that his initial complaints of "an aching, warm, heavy and pulling pain on his right shoulder," *see* Compl., at 18 ¶ 41, are sufficient to plausibly suggest he suffered from an objectively serious medical need. *See Wilhelm*, 680 F.3d at 1122; *Lopez*, 203 F.3d at 1131 ("serious medical needs" include "a medical condition that significantly affects an individual's daily activities," and "the existence of chronic and substantial pain") (citation and internal quotations omitted); *cf. Gonzalez v. Runnels*, No. C 07-2303 MHP PR, 2010 WL 3629843, at *5 (N.D. Cal. Sept. 14, 2010) (finding prisoner's "occasional" complaints of shoulder pain sufficient to create triable issue of fact as to whether he suffered from an objectively serious medical condition), *aff'd*, 451 F. App'x 664 (9th Cir. 2011).

To support a claim of deliberate indifference, however, Miranda must allege additional facts which plausibly show the course of treatment Defendants Ramirez, Flores, Doe, and Adams chose in response to his need, was "medically unacceptable under the circumstances," and that they "chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Edmo*, 935 F.3d at 786 (citations omitted). "Deliberate

indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), is present only in cases where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need," and where that indifference is alleged to have caused harm. *Jett*, 439 F.3d at 1096. The alleged indifference to medical needs must also be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

As to Officers Flores and Ramirez, Miranda alleges only that they did not initially consider his request to be medically evaluated seriously, and that they "began to laugh and called him a liar." (Compl. at 18 ¶¶ 40, 47.) However, Miranda further admits that after only "several minutes" nurse Doe, *was* called, examined him, "reassured [him] that the pain would go away," and informed him that he "would be seen by medical staff the following day." (*Id.* at 19 ¶ 50.) None of these allegations plausibly suggest any of these parties purposefully failed to respond. *See Jett*, 439 F.3d at 1096.

To the extent Miranda also claims Dr. Adam "denied him physical therapy, an x-ray, and MRI" during his first appointment in July 2018, after he had been transferred to PBSP, but later requested both an x-ray, an MRI, and referred him to an orthopedic surgeon after "PT" and at least one "cortisone shot" failed to relieve his pain, *see* Compl. at 22 ¶¶ 70-71 & Exs. F & G at 45, 47, 52, he also fails to allege facts sufficient to support a deliberate indifference claim. *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *id.* at 107 (noting that "the question whether an x-ray ... is indicated is a classic example of a matter for medical judgment," and that provider's failure to order "an x-ray or additional diagnostic techniques" does not constitute deliberate indifference); *Edmo*, 935 F.3d at 786 ("A difference of opinion between a physician and the prisoner—or between medical

professionals—concerning what medical care is appropriate does not amount to deliberate indifference.") (citations omitted); *see also Nam Ba Nguyen v. California Prison Health Serv.*, No. 2:13-CV-963 MCE EFB P, 2017 WL 3208718, at *11 (E.D. Cal. July 28, 2017) (finding no deliberate indifference based on delay in the processing of prisoner's x-ray request).

Finally, Miranda alleges Warden Madden and Defendant Reilly, the CEO of Health Care at CEN, also violated his Eighth Amendment rights because they are both "responsible … for the welfare and safety" and "personal health care of all inmates," and were notified of the August 22, 2015 incident by an unidentified official who assured him he "would receive all the medical aid he needed." (*See* Compl. at 12, 19 ¶¶ 4, 5, 54.) However, "[b]ecause vicarious liability is inapplicable to […] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Jones v. Community Redevelopment Agency of City of Los Angeles,* 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least me degree of particularity overt acts which defendants engaged in" in order to state a claim). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode,* 423 U.S. 362, 370-71 (1976)); *see also Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011).

Miranda may only hold supervisors like Madden and Reilly individually liable in a § 1983 suit by alleging some "culpable action, or inaction, is directly attributed to them." *Starr*, 652 F.3d at 1207. More specifically, a supervisor "causes" a constitutional deprivation if he (1) personally participates in or directs a subordinate's constitutional violation; or (2) the constitutional deprivation can otherwise be "directly attributed" to the supervisor's own culpable action or inaction, even though the supervisor was not "physically present when the [plaintiff's] injury occurred." *Id.* at 1206-07; *see also Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (supervisor may be held liable

under Section 1983 only if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation") (citations and internal quotation marks omitted).

Because Miranda does not offer any specific "factual content" that might allow the Court to "draw the reasonable inference" that either Warden Paramo or Health Care CEO Reilly *personally* participated in or directly attributed to any unconstitutional conduct alleged to have caused him harm, the Court finds his Complaint, as currently pleaded, relies on conclusory statements which *Iqbal* makes clear fail to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 568 ("[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient to show that the pleader is entitled to relief.).

For all these reasons, the Court dismisses Miranda's Complaint for failing to state any Eighth Amendment claim upon which § 1983 relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez*, 203 F.3d at 1126-27; *Watison*, 668 F.3d at 1112. In light of his pro se status, however, the Court will grant Miranda leave to amend his pleading deficiencies, if he can. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## III. Conclusion and Orders

For all the reasons discussed, the Court:

1. **GRANTS** Miranda's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Miranda's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). ALL PAYMENTS

MUST CLEARLY IDENTIFY THE NAME AND CASE NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Miranda's Complaint in its entirety for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and **GRANTS** him 45 days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted. Miranda's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Miranda fails to file an Amended Complaint within 45 days, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: November 4, 2019

*Larry A. Burns*
Hon. Larry Alan Burns
Chief United States District Judge