1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMBERTO I. MIRANDA,<br>CDCR #AU-3793,<br><br>                              Plaintiff,<br><br>v.<br><br>RAYMOND MADDEN, Warden;<br>RAMIREZ, Correctional Officer; and<br>FLORES, Correctional Officer,<br><br>                              Defendants. | Case No.: 3:19-cv-01605-LAB-RBM<br><br>**REPORT & RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE RE:**<br><br>**(1) GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION TO DISMISS<br>PLAINTIFF'S FIRST AMENDED<br>COMPLAINT; AND**<br><br>**(2) GRANTING PLAINTIFF'S<br>MOTION FOR LEAVE TO FILE<br>SECOND AMENDED COMPLAINT**<br><br>**[Docs. 15 & 22]** |

## I.     INTRODUCTION

Plaintiff Humberto I. Miranda ("Plaintiff"), a state prisoner proceeding pro se, brings an action arising under 42 U.S.C. § 1983 ("Section 1983") related to Eighth Amendment conditions of confinement claim after wet and heavy objects from the ceiling allegedly fell on him and his girlfriend in a facility visitation room.  The incident occurred while Plaintiff was a prisoner at Centinela State Prison ("CEN").

1

On February 8, 2021, Defendants Raymond Madden ("Warden Madden"), Correctional Officer Ramirez ("Officer Ramirez"), and Correctional Officer Flores ("Officer Flores") filed a Motion to Dismiss ("MTD") Plaintiff's First Amended Complaint. (Doc. 15.) Plaintiff filed his response on April 5, 2021, and Defendants filed a reply on April 14, 2021. (Docs. 20, 24.) While the MTD was pending a report and recommendation by the undersigned, Plaintiff filed a Motion for Leave to Amend Complaint ("Motion for Leave") on April 9, 2021. (Doc. 22.)

For the reasons outlined below, the undersigned issues a Report and Recommendation as to Defendants' MTD and Motion for Leave. *See* 28 U.S.C. § 636(b)(1)(B); CivLR 72.1(c) and 72.3(a). After a thorough review of the pleadings, papers, prior orders of the Court, the facts, and applicable law, the undersigned respectfully recommends that Defendants' MTD be **GRANTED IN PART AND DENIED IN PART**. (Doc. 15.) As to Plaintiff's Motion for Leave, the undersigned respectfully recommends that the motion be **GRANTED**. (Doc. 22.)

## II.   PROCEDURAL HISTORY

On August 26, 2019, Plaintiff filed a Complaint against Nancy Adam, John Doe, Kevin Reilly, Warden Madden, Officer Ramirez, and Officer Flores alleging civil rights violations arising under Section 1983. (Doc. 1.) Specifically, Plaintiff claimed Eighth Amendment violations alleging deliberate indifference towards his conditions of confinement and medical needs. (*Id.*)

On November 4, 2019, the Court granted Plaintiff leave to proceed *in forma pauperis*, conducted its initial screening of the Complaint, and dismissed it sua sponte in its entirety for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b). (Doc. 5.) The Court granted Plaintiff forty-five days leave to file an amended complaint to address all pleading deficiencies. (*Id.* at 14.) On January 27, 2020, Plaintiff filed an Amended Complaint ("FAC") (Doc. 8) where he renamed the same Defendants, realleged both Eighth Amendment claims, sought declaratory relief, compensatory and punitive damages, and demanded a jury trial. (*See* Doc. 8 at 23-25.)

2

The Court dismissed Plaintiff's claim for inadequate medical care against all Defendants on May 26, 2020. (Doc. 9 at 14.) The Court directed the Clerk to issue a summons upon Warden Madden, Officer Ramirez, and Officer Flores as to the remaining Eighth Amendment claim, finding sufficient facts to plausibly allege that these Defendants acted with deliberate indifference towards Plaintiff's conditions of confinement. (*Id.*) Now, the instant MTD seeks dismissal of Plaintiff's Eighth Amendment conditions of confinement claim.

### III.   **FACTUAL BACKGROUND**

For purposes of the instant Motion, the foregoing facts from the FAC are accepted as true. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

*i.  Allegations in FAC*

On August 22, 2015, Plaintiff was sitting at a table with his girlfriend Veronica Adame ("Adame") in CEN's Facility C visiting room when "wet and heavy objects, water, and debri[s] that smelled of mildew fell from the ceiling [striking] both Plaintiff and Adame on the top of their heads, neck, back, and shoulders." (Doc. 8 at 14, ¶¶ 13-14.) Plaintiff "covered Adame with his body and ushered her under the table" to seek refuge. (*Id.* at 14, ¶ 15.) Afterward, Plaintiff and Adame observed an 8 x 8-foot hole in the ceiling directly above where they were sitting. (*Id.* at 14, ¶ 16.) "Their food items, money, and personal possessions were scattered on the floor and covered in water, ceiling tile, and debri[s]." (*Id.* at ¶ 17.)

After Plaintiff reported the incident and requested medical aid, Officers Ramirez and Flores laughed. (*Id.* at 17-18, ¶¶ 34-38.) Adame was then escorted to the visiting-room lobby and medical staff was called to "check on [her] injuries." (*Id.* at 17-18, ¶ 35.)

Additionally, Plaintiff contends Officer Ramirez and Officer Flores were "assigned to [the] C-Facility visiting room for at least [ninety] days" before the ceiling collapsed and during that time the air conditioner "kept shutting do[wn]" causing average temperatures to reach between 90 to 155 degrees during the summer. (*Id.* at 15-16, ¶¶ 24-26.) After the air conditioner was reported to be repaired "a leak began to fall in the immediate area where

3

1   . . . the ceiling collapsed." (*Id.* at 16, ¶ 27.)  Plaintiff, Adame, and "many other inmates
2   and visitors" notified Officers Ramirez and Flores about the leak and the possible risk of
3   injury, but both Officers "waived it off as nonsense," and refused "to [submit] a
4   maintenance work order to fix the leak." (*Id.* at 16-17, ¶¶ 29-32.)  Plaintiff also contends
5   Officers Ramirez and Flores' refusal to address and/or report the leak placed him at a
6   "substantial risk of injury from the date of the notice up to August 22, 2015," [when] the
7   ceiling eroded[,] . . . became soaked with water" and "eventually collaps[ed]." (*Id.* at 17,
8   ¶ 33.)

9       Plaintiff also alleges that Warden Madden was "well aware of a leak coming from
10  the ceiling" after a committee composed of inmate visitors, including Adame, reported
11  "[t]his and many other complaints and concerns" directly to him "at or around [thirty] days
12  prior to the incident . . . ." (*Id.* at 14-15, ¶¶ 18-22.)  In addition to the foregoing notice,
13  Warden Madden attended a meeting where the committee "notified prison officials of the
14  leak in the ceiling and the continuing problems with the air conditioners in [the] visiting
15  room." (*Id.* at 15, ¶ 21, 17, ¶ 32.)

16      *ii. Surviving Cause of Action in FAC*
17      The remaining claim in the FAC alleges an Eighth Amendment unsafe conditions-
18  of-confinement cause of action against Warden Madden, Officer Ramirez, and Officer
19  Flores. (Doc. 8 at 23-24, ¶¶ 73-74.)  Warden Madden is sued in his individual capacity,
20  with liability being premised upon his responsibility for the operation of CEN and the
21  welfare and safety of all inmates in his custody. (*Id.* at 12, ¶ 4.)  Officers Ramirez and
22  Flores, both CEN correctional officers, are sued in their individual capacities with liability
23  premised upon their assignment to CEN Facility C visiting room, awareness of the leak in
24  the ceiling, and failure to submit a maintenance request. (*Id.* at 12-13, ¶¶ 6-7.)

25      *iii. Plaintiff's Prayer for Relief*
26      Plaintiff seeks declaratory relief, compensatory and punitive damages, costs, and
27  fees. (Doc. 8 at 24-25, ¶¶ 77-82.)  This includes compensatory damages in the amount of
28  $250,000 against all Defendants, jointly and severally; and punitive damages in the amount

1  of $100,000 against each Defendant. (*Id.*)

2  ## IV.   **LEGAL STANDARD**

3  *i.   Motion to Dismiss*

4  A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

5  Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ.

6  P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 932 (9th Cir. 2001). The motion may be

7  granted only if the complaint lacks a "cognizable legal theory" or sufficient facts to support

8  a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122

9  (9th Cir. 2013) (internal quotations and citations omitted). Although a complaint need not

10 contain detailed factual allegations, it must plead "enough facts to state a claim to relief

11 that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "A

12 claim has facial plausibility when the plaintiff pleads factual content that allows the court

13 to draw the reasonable inference that the defendant is liable for the misconduct alleged."

14 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citing *Twombly*, 550 U.S. at 556).

15 "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

16 requires more than labels and conclusions, and a formulaic recitation of the elements of a

17 cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478

18 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions"

19 as true. *Iqbal*, 556 U.S. at 678.

20 In deciding a 12(b)(6) motion, "all material allegations of the complaint are accepted

21 as true, as well as all reasonable inferences to be drawn from them." *Navarro*, 250 F.3d at

22 932 (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 338 (9th Cir. 1996)). But, "to be entitled

23 to the presumption of truth, allegations in a complaint . . . may not simply recite the

24 elements of a cause of action, but must contain sufficient allegations of underlying facts to

25 give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*,

26 652 F.3d 1202, 1216 (9th Cir. 2011).

27 In reviewing the sufficiency of a complaint, the court is limited to the complaint

28 itself and its attached exhibits, documents incorporated by reference, and matters properly

1   subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-

2   23 (2007); *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).

3        *ii.  Standard for Pro Se Litigants*

4        Where a plaintiff appears in propria persona in a civil rights case, the court must

5   construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-*

6   *Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal

7   construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d

8   1258, 1261 (9th Cir. 1992).  In giving a liberal interpretation to a pro se civil rights

9   complaint, courts may not "supply essential elements of claims that were not initially pled."

10  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague

11  and conclusory allegations of official participation in civil rights violations are not

12  sufficient to withstand a motion to dismiss." *Ivey*, 673 F.2d at 268; *see also Jones v. Cmty.*

13  *Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations

14  unsupported by facts insufficient to state a claim under § 1983).  "The plaintiff must allege

15  with at least some degree of particularity overt acts which defendants engaged in that

16  support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal quotation omitted).

17       Notably, the court must give a pro se litigant leave to amend his complaint "unless

18  it determines the pleading could not possibly be cured by the allegation of other facts."

19  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Thus, before a pro se civil rights

20  complaint may be dismissed, the court must provide the plaintiff with a statement of the

21  complaint's deficiencies. *Karim-Panahi*, 839 F.2d at 623-24.  But where amendment of a

22  *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate.  *See*

23  *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

24            **V.  DISCUSSION**

25       Defendants seek to dismiss the remaining cause of action against Warden Madden,

26  Officer Ramirez, and Officer Flores arguing that the FAC fails to state a cause of action

27  under the Eighth Amendment in that a leaking air-conditioning unit is not an objectively

28  sufficiently serious harm and also because there are no facts to suggest deliberate

1    indifference by any Defendant. (Doc. 15.)  Defendants also seek dismissal based upon

2    qualified immunity grounds. (Doc. 15 at 13-14.) Plaintiff counters that viable claims exist

3    as Defendants exposed Plaintiff to cruel and unusual punishment by way of unsafe

4    conditions of confinement and each Defendant acted with  deliberate indifference to those

5    conditions. (Doc. 8 at 23-24, ¶¶ 73-74.)

6        *i.   Requirements to State an Eighth Amendment Conditions of Confinement Claim*

7        "It is undisputed that the treatment a prisoner receives in prison and the conditions

8    under which [the prisoner] is confined are subject to scrutiny under the Eighth

9    Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*,

10   511 U.S. 825, 832 (1994).  The Eighth Amendment requires that prison officials take

11   reasonable measures to guarantee the safety and well-being of prisoners. *Farmer*, 511 U.S.

12   at 832–833; *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "To determine whether

13   the conditions of [a plaintiff's] confinement constitut[e] cruel and unusual punishment, [a

14   court] must assess whether [plaintiff] was deprived of the 'minimal civilized measure of

15   life's necessities.'" *Frost v. Agnos*, 152 F.3d 1124, 1128 (1991) (quoting *Wilson v. Seiter*,

16   501 U.S. 294, 304 (1991)). The Eighth Amendment analysis consists of both an objective

17   and subjective test.  Under the objective test, a plaintiff must allege facts sufficient to

18   plausibly show that he faced conditions posing a "substantial risk of serious harm" to his

19   health or safety; and under the subjective test, a plaintiff must allege facts demonstrating

20   that the individual prison official he seeks to hold liable was "deliberately indifferent" to

21   those risks. *Farmer*, 511 U.S. at 837; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir.

22   2010).

23           a.  Objective Test's Exacerbating Condition Requirement

24       California district courts have held that conditions such as slippery floors, without

25   more, "do not state . . . an arguable claim for cruel and unusual punishment." *Jackson v.*

26   *State of Ariz.*, 885 F.2d 639, 641 (9th Cir. 1989), *superseded by statute on other grounds*

27   *as stated in Lopez*, 203 F.3d at 1130-31.  Even in cases involving hazardous conditions

28   coupled with a prison staff's knowledge and/or failure to repair such condition, to impose

7

1  liability under the Eighth Amendment courts generally require an exacerbating condition.
2  *See, e.g., Wallace v. Sherman*, 1:20-cv-00213 (EPG)(PC), 2020 WL 4193968 (E.D. Cal.
3  July 21, 2020) (dismissing complaint that alleged a leaky roof that prison staff knew of,
4  which caused plaintiff to slip and fall resulting in a head injury, was not an Eighth
5  Amendment violation).  For example, in *Osolinski v. Kane*, 92 F.3d 934 (9th Cir. 1996),
6  where an oven door fell off and burned plaintiff because prison officials failed to make
7  repairs, the Court noted plaintiff's failure to allege facts demonstrating that he could not
8  protect himself from the danger.  (*Id.* at 938.)  The Court found no Eighth Amendment
9  violation as the objective test failed and it ultimately reversed and remanded to dismiss the
10  case on qualified immunity grounds. (*Id.* at 939.)

11       An example of an exacerbating condition includes circumstances where a prisoner
12  is ordered to continue operating equipment, despite the prison's knowledge of its defects
13  and/or danger.  *Morgan v. Morgensen*, 465 F.3d. 1041, 1045 (9th Cir. 2006) (finding
14  prison's order to work dangerously defective printing press constituted an exacerbating
15  condition); *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir. 1985) (finding inadequate lighting
16  exacerbated safety hazards in prison's occupational areas).  Another example of an
17  exacerbating condition includes circumstances where a dangerous condition exists,
18  coupled with past instances of injury involving a handicapped plaintiff.  In *Frost*, where a
19  pretrial detainee who wore a leg cast fell multiple times in a slippery bathroom because
20  officials denied him a handicapped-accessible shower, the Court held that the plaintiff
21  could state a Section 1983 claim.  *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998).
22  The Court reasoned that because plaintiff had fallen and injured himself multiple times
23  while on crutches, this set of facts was distinguishable from *Jackson* where slippery floors
24  by themselves did not constitute cruel and unusual punishment. *Id.*

25       Here, Plaintiff alleges that the ceiling leak posed a danger to himself, Adame, and
26  other visitors. (Doc. 8.)  Although Plaintiff and Adame allegedly suffered injuries because
27  the ceiling collapsed above them in the visiting room, the FAC, by itself, fails to show an
28  additional condition that exacerbated the danger of the ceiling leak.  (*Id.*)  Similar to

*Osolinski*, the officers in this case had notice of the leaking air conditioning unit, failed to request repairs, and Plaintiff sustained an injury as a result. (Doc. 8 at 13-17, ¶¶ 13-14, 29-32.) As in *Osolinksi*, Plaintiff has not established an additional exacerbating condition, and therefore, has failed to demonstrate a substantial risk of serious harm for his Eighth Amendment claim. *Osolinksi*, 92 F.3d at 939.

Further, this case is distinguishable from *Frost*. There are no facts in Plaintiff's FAC to suggest that he suffered from any disability or previously sustained injuries from the leaking roof. (Doc. 8); *see also Frost*, 152 F.3d at 1127, 1129. Plaintiff claims in his Opposition that Officer Ramirez and Officer Flores specifically assigned him and Adame to sit underneath the leaking roof. (Doc. 20 at 12-13.) However, because Plaintiff raised this fact in his Opposition and not in his FAC, these additional allegations cannot be considered for purposes of ruling on Defendants' 12(b)(6) motion to dismiss. *Tellabs, Inc.*, 551 U.S. at 322-23. Because the FAC does not allege an exacerbating condition to demonstrate a substantial risk of harm, Plaintiff fails to meet the objective test the Eighth Amendment requires. *Morgensen*, 465 F.3d. at 1045; *Osolinksi*, 92 F.3d at 939.

### b. Subjective Test's Deliberate Indifference Requirement

To demonstrate deliberate indifference, a plaintiff must allege facts sufficient to plausibly show that the defendant both knew of and disregarded a substantial risk of serious harm to his health and safety. *Farmer*, 511 U.S. at 837. Thus, a plaintiff must allege "the official [was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that] he . . . also dr[e]w that inference." *Id.*

Here, Plaintiff alleges that Defendants were aware of the ceiling leak because a visitors' committee notified Warden Madden of the issue on multiple occasions, including a meeting that took place thirty days before the ceiling collapsed on Plaintiff and Adame. (Doc. 8 at 14-15, ¶¶ 18-22; Doc. 9 at 12.) Despite the concerns, Warden Madden allegedly failed to take immediate and precautionary measures such as ordering the ceiling's repair. (Doc. 8 at 15, 17, ¶¶ 21, 32.) Plaintiff also alleges that Officer Ramirez and Officer Flores were assigned to CEN's Facility C visiting room for at least ninety days before the incident

9

1  and visitors and other inmates put them on notice of the leak. (*Id.* at 15-16, ¶¶ 24-30.)
2  Plaintiff contends Officer Ramirez and Officer Flores failed to submit a maintenance
3  request to repair the leak and waived the August 2015 incident as nonsense. (Doc. 8 at 16-
4  17, ¶ 30.; Doc. 9 at 12.)   Additionally, Plaintiff alleges both Officers laughed after Plaintiff
5  and Adame reported the incident. (Doc. 8 at 17-18, ¶¶ 34-38.) Officer Ramirez and Officer
6  Flores' alleged conduct is similar to defendants' conduct in *Robinson v. Prunty*, 249 F.3d
7  862, 867 (9th Cir. 2001), where the court found prison officials' alleged awareness and
8  indifference to a serious risk of violent outbreaks, coupled with alleged joking, and failure
9  to intervene demonstrated deliberate indifference. (Doc. 9 at 13.)   Based on the FAC's
10  allegations, it plausibly alleges that Defendants knowingly disregarded the ceiling leak and
11  the risks it posed to inmates seated beneath it. (*Id.* at 12-13.)  However, because the FAC
12  fails to plausibly satisfy the objective prong of the Eighth Amendment claim, Plaintiff fails
13  to state a claim establishing an Eighth Amendment violation for unsafe conditions of
14  confinement. *See supra* pp. 7-9.

15       Based upon the foregoing, the undersigned respectfully recommends that
16  Defendants' MTD be **GRANTED** for failure to state an Eighth Amendment claim upon
17  which relief can be granted.

18       *ii. Qualified Immunity Defense*

19       Qualified immunity shields government officials from liability for civil damages
20  unless their conduct violates clearly established statutory or constitutional rights of which
21  a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 638-40
22  (1987).  The U.S. Supreme Court set forth a two-part analysis for determining government
23  officials' qualified immunity defense.  First, the court must consider whether the facts
24  "[t]aken in the light most favorable to the party asserting the injury. . . show [that] the
25  [defendant's] conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201
26  (2001); *see also Scott v. Harris*, 550 U.S. 372, 377 (2007).  Secondly, the court must
27  determine whether that right was clearly established at the time of the challenged conduct.
28  *Katz*, 533 U.S. at 201.

3:19-cv-01605-LAB-RBM

Defendants argue they are entitled to qualified immunity because established preexisting law did not give them "fair warning" that their conduct was unlawful. (Doc. 15 at 13-14.)   However, a qualified immunity analysis is premature at this stage as Plaintiff's FAC fails to plausibly allege any constitutional violation. *See supra* pp. 7-10. Without a constitutional violation, there is no necessity to inquire whether the right was clearly established. *Saucier*, 533 U.S. at 201; *see also County of Sacramento v. Lewis*, 523 U.S. 833, 841 (1988) ("[The] better approach to resolving cases in which defense of qualified immunity is raised is to determine first whether plaintiff has alleged a deprivation of constitutional right at all."); *Wheeler v. Marengo*, 2019 WL 5963914, at *6 (S.D. Cal., Nov. 13, 2019) (finding that it would be premature to recommend granting or denying a qualified immunity defense on the merits after recommending granting a motion to dismiss and granting plaintiff leave to amend); *Victoria v. City of San Diego*, 326 F.Supp.3d 1003 (2018) (finding that the court was not in a position to analyze the qualified immunity defense with a particular degree of scrutiny after granting defendant's motion to dismiss and granting plaintiff leave to amend his claims).   Based upon the foregoing, the undersigned respectfully recommends that Defendants' MTD on qualified immunity grounds be **DENIED WITHOUT PREJUDICE**.

*iii. Plaintiff's Motion for Leave to File Second Amended Complaint*

As stated above, Plaintiff filed a Motion for Leave to file a second amended complaint after full briefing on Defendants' MTD. (Doc. 22.)

Generally, courts freely grant leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).   "Leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).   It "should be granted 'if it appears at all possible that the plaintiff can correct defect.'"   *Schreiber*, 806 F.2d at 1401 (quoting *Breier v. N.Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 789-90 (9th Cir. 1963)).   Moreover, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . , undue

11

prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, "the Ninth Circuit has recognized that plaintiffs do not enjoy unlimited opportunities to amend their complaints." *Stone v. Conrad Preby's*, 2013 WL 139939, at *2 (S.D. Cal. Jan. 10, 2013) (citing *McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1996)); *see also Lopez*, 203 F.3d at 1130.

Here, Plaintiff requested to amend his complaint to correct any pleading deficiencies. (Doc. 22 at 2.)  Based on additional facts alleged in Plaintiff's Opposition to the MTD, (Doc. 20), it appears Plaintiff may be able to allege additional facts in an amended complaint to support his Eighth Amendment claim.  *See supra* pp. 7-9; *see also Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003) (noting that facts raised for the first time in an opposition to a motion to dismiss should be considered in determining whether to grant leave to amend.)  Allowing Plaintiff a second[1]  opportunity to file a second amended complaint would not cause an undue delay or unduly prejudice the opposing party.  Therefore, the undersigned recommends that Plaintiff's Motion for Leave to amend his complaint be **GRANTED**.  (Doc. 22.)

## VI.   CONCLUSION

For the reasons discussed, the undersigned respectfully submits this Report and Recommendation to United States District Judge Larry Alan Burns pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 72.1(c)(1)(e).  For the reasons set forth above, **IT IS HEREBY RECOMMENDED** that the Court issue an order approving and adopting this Report and Recommendation:

(1)   **GRANTING** Defendants' Motion to Dismiss Plaintiff's First Amended Complaint;

---

[1] On November 4, 2019, the Court gave Plaintiff forty-five days leave to file an amended complaint after dismissing Plaintiff's Complaint *sua sponte* during an initial screening. (Doc. 5.)  Plaintiff filed the FAC on January 27, 2020. (Doc. 8.)

(2)    **GRANTING** Plaintiff leave to file a second amended complaint;

(3)    **DIRECTING** the Clerk of Court to send Plaintiff a blank Civil Rights Act 42 U.S.C. § 1983 form complaint;

(4)    **DIRECTING** Plaintiff to use the blank form complaint by the Clerk of Court, to the extent Plaintiff elects to file a second amended complaint.  The second amended complaint must allege any and all claims against Defendants in one pleading **WITHOUT** reference to any of the superseded pleadings (i.e., Initial Complaint or FAC).  *See* Local Civil Rule 15.1; and

(5)    **GRANTING** Plaintiff through **June 14, 2021** to file a second amended Complaint.

It is further **ORDERED** that that no later than **May 12, 2021**, any parties to this action may file written objections to this Report and Recommendation with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

It is further **ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **May 26, 2021**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATE:  April 28, 2021

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE

13