UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMBERTO I. MIRANDA, CDCR #AU-3793, | Case No.: 3:19-cv-01605-LAB-RBM |
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| v. RAYMOND MADDEN, Warden; RAMIREZ, Correctional Officer; and FLORES, Correctional Officer, | |
| Defendants. | |
| | **[Doc. 30]** |

## I.      INTRODUCTION

Plaintiff Humberto I. Miranda ("Plaintiff"), a state prisoner proceeding pro se and *in forma pauperis*, brings an action arising under 42 U.S.C. § 1983 ("Section 1983") related to Eighth Amendment conditions of confinement claim after wet and heavy objects from the ceiling allegedly fell on him and his girlfriend in a facility visitation room. The incident occurred while Plaintiff was a prisoner at Centinela State Prison ("CEN").

On August 17, 2021, Defendants Raymond Madden ("Warden Madden"), Correctional Officer ("C/O") Flores and C/O Ramirez filed a motion to dismiss ("MTD") Plaintiff's second amended complaint ("SAC"). (Doc. 30.) Plaintiff filed his response to

1  the MTD ("Opposition") on November 8, 2021, and Defendants filed a reply ("Reply") on
2  November 15, 2021.  (Docs. 38, 39.)

3       The undersigned issues a Report and Recommendation as to Defendants' MTD
4  pursuant to 28 U.S.C. § 636(b)(1)(B) and Civil Local Rules 72.1(c) and 72.3(a).  After a
5  thorough review of the pleadings, papers, prior orders of the Court, the facts, and applicable
6  law, the undersigned respectfully recommends that Defendants' motion to dismiss
7  Plaintiff's second amended complaint be **GRANTED IN PART** and **DENIED IN PART**.
8  The undersigned further recommends that any further requests for leave to amend
9  Plaintiff's complaint be **DENIED** for the reasons outlined below.

10       **II.**   **PROCEDURAL HISTORY**

11       On August 26, 2019, Plaintiff filed a complaint against Nancy Adam, John Doe,
12  Kevin Reilly, Warden Madden, C/O Flores and C/O Ramirez alleging civil rights violations
13  arising under Section 1983.  (Doc. 1.)  Specifically, Plaintiff claimed Eighth Amendment
14  violations alleging deliberate indifference towards his conditions of confinement and
15  medical needs.  (*Id.*)

16       On November 4, 2019, the Court granted Plaintiff leave to proceed *in forma*
17  *pauperis*, conducted its initial screening of the complaint, and dismissed it *sua sponte* in
18  its entirety for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and §
19  1915A(b).  (Doc. 5.)  The Court granted Plaintiff forty-five days leave to file an amended
20  complaint to address all pleading deficiencies.  (*Id.* at 14.)

21       On January 27, 2020, Plaintiff filed an amended complaint ("FAC").  The Court's
22  screening order dismissed Plaintiff's claim for inadequate medical care against all
23  Defendants on May 26, 2020.  (Doc. 9 at 14.)  On April 28, 2021, the undersigned issued
24  a report and recommendation granting Defendants' motion to dismiss Plaintiff's FAC and
25  granting Plaintiff leave to file a SAC, which was adopted by District Judge Larry Alan
26  Burns.  (Docs. 25, 26.)  Plaintiff filed a SAC (Doc. 29) on August 2, 2021, wherein he
27  renamed Warden Madden, C/O Flores, and C/O Ramirez and realleged an Eighth
28  / / /

1    Amendment conditions of confinement claim.  (Doc. 29 at 15.)  The instant MTD seeks
2    dismissal of said claim.  (Doc. 30.)

3                    **III.   FACTUAL BACKGROUND**

4            For purposes of the instant MTD, the foregoing facts from the SAC are accepted as
5    true.  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

6            A.    Allegations in SAC

7            On August 22, 2015, Plaintiff was sitting at a table with his girlfriend Veronica
8    Adame ("Adame") in CEN's C-Facility visiting room when suddenly and unexpectedly "a
9    wet and heavy object hit Adame on the top of her head."  (Doc. 29 at 10, ¶ 10.)  "Almost
10   immediately, more wet and heavy objects, water, and debri[s] that smelled of mildew fell
11   from the ceiling and struck both Plaintiff and Adame on the top of their head, neck, back,
12   and shoulders."  (*Id.*)  Plaintiff "covered Adame with his body and [u]shered her under
13   their assigned table" to seek refuge.  (*Id.* at 10, ¶ 11.)  While Plaintiff and Adame were
14   under the table, Plaintiff held onto the table "with his right arm" as "wet and heavy objects
15   landed on top of his right shoulder."  (*Id.*)  Afterwards, Plaintiff and Adame observed an 8
16   x 8-foot hole in the ceiling directly above where they were sitting.  (*Id.* at 11, ¶ 12.)  "Their
17   food, money, and personal possessions were scattered on the floor and covered in water,
18   ceiling tile, and debri[s]."  (*Id.*)

19           Defendants C/O Flores and C/O Ramirez allegedly laughed and stated, the "sky is
20   falling" when they met Plaintiff and Adame.  (*Id.* at 11, ¶ 13.)  Medical personnel were
21   called to check Adame; however, medical aid was not requested for Plaintiff.  (*Id.*)  When
22   Plaintiff asked C/O Flores and C/O Ramirez if they would call for medical aid, C/O
23   Ramirez sarcastically asked, "are you serious?" and warned Plaintiff that his visitation
24   would be terminated if he sought medical attention.  (*Id.*)  Plaintiff was seen by a nurse
25   after Plaintiff notified "Sgt. Din about [D]efendants' refusal to call for medical aid." (*Id.*
26   at 12, ¶ 13.) During this medical visit, Defendants allegedly laughed and told the nurse to
27   ignore Plaintiff.  (*Id.*)
28   / / /

                                     3

1    Additionally, Plaintiff contends C/O Flores and C/O Ramirez were "assigned to
2    CEN's C-Facility [v]isiting [r]oom for at least 90 days" before the ceiling collapsed. (*Id.*
3    at 16, ¶ 32.)  Plaintiff alleges he and Adame notified C/O Flores and C/O Ramirez about
4    the possible risk from the ceiling thirty days prior to the August 22, 2015 incident, but both
5    Defendants declined to submit an emergency maintenance work-order. (*Id.* at 17, ¶ 33.)
6    Plaintiff alleges many other inmates and visitors also notified C/O Flores and C/O Ramirez
7    about the leak in the visiting room's ceiling. (*Id.* at 17, ¶ 35.)  Plaintiff alleges C/O Flores
8    and C/O Ramirez's refusal to address the leaky ceiling placed Plaintiff in a substantial risk
9    for injury because the ceiling soaked with water, eroded, and eventually collapsed on
10   Plaintiff and Adame. (*Id.* at ¶ 37.)

11       Plaintiff also alleges that Warden Madden was "well aware of a leak coming from
12   the ceiling in CEN's C-Facility visiting room" after a committee composed of inmate
13   visitors, including Adame, reported "the leak in the visiting room . . . directly to
14   [D]efendant Madden . . . 30 days prior to the incident of August 22, 2015." (*Id.* at 15–16,
15   ¶ 28.)  In addition to the foregoing notice, Warden Madden attended a meeting where the
16   committee reported the growing water stains in the ceiling tiles and requested that the area
17   under the leak be closed off to inmates and visitors to avoid unnecessary injury. (*Id.* at ¶
18   29.)

19       B.   Prayer for Relief
20       Plaintiff seeks declaratory relief, compensatory and punitive damages, costs, and
21   fees. (*Id.* at 20, ¶¶ 49–51.)  This includes compensatory damages in the amount of
22   $250,000 against each Defendant, jointly and severally; and punitive damages in the
23   amount of $250,000 against each Defendant. (*Id.*)

24              **IV.   LEGAL STANDARD**

25       A.   Motion to Dismiss
26       A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil
27   Procedure tests the legal sufficiency of the claims asserted in the complaint. FED. R. CIV.
28   P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 932 (9th Cir. 2001).  The motion may be

4

1    granted only if the complaint lacks a "cognizable legal theory" or sufficient facts to support

2    a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122

3    (9th Cir. 2013) (internal quotations and citations omitted).  Although a complaint need not

4    contain detailed factual allegations, it must plead "enough facts to state a claim to relief

5    that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).  "A

6    claim has facial plausibility when the plaintiff pleads factual content that allows the court

7    to draw the reasonable inference that the defendant is liable for the misconduct alleged."

8    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

9         "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

10   requires more than labels and conclusions, and a formulaic recitation of the elements of a

11   cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478

12   U.S. 265, 286 (1986) (alteration in original)).  A court need not accept "legal conclusions"

13   as true. *Iqbal*, 556 U.S. at 678.

14        In deciding a 12(b)(6) motion, "all material allegations of the complaint are accepted

15   as true, as well as all reasonable inferences to be drawn from them." *Navarro*, 250 F.3d at

16   932 (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 338 (9th Cir. 1996)).  But "to be entitled

17   to the presumption of truth, allegations in a complaint . . . may not simply recite the

18   elements of a cause of action, but must contain sufficient allegations of underlying facts to

19   give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*,

20   652 F.3d 1202, 1216 (9th Cir. 2011).

21        In reviewing the sufficiency of a complaint, the court is limited to the complaint

22   itself and its attached exhibits, documents incorporated by reference, and matters properly

23   subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–

24   23 (2007); *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).

25        B.    Standard for Pro Se Litigants

26        Where a plaintiff appears in propria persona in a civil rights case, the court must

27   construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-*

28   *Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal

1  construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d

2  1258, 1261 (9th Cir. 1992).   In giving a liberal interpretation to a pro se civil rights

3  complaint, courts may not "supply essential elements of the claim[s] that were not initially

4  pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

5  "Vague and conclusory allegations of official participation in civil rights violations are not

6  sufficient to withstand a motion to dismiss." *Ivey*, 673 F.2d at 268; *see also Jones v. Cmty.*

7  *Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations

8  unsupported by facts insufficient to state a claim under Section 1983).   "The plaintiff must

9  allege with at least some degree of particularity overt acts which defendants engaged in

10  that support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal quotation omitted).

11         Notably, the court must give a pro se litigant leave to amend his complaint "unless

12  it determines the pleading could not possibly be cured by the allegation of other facts."

13  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).   Thus, before a pro se civil rights

14  complaint may be dismissed, the court must provide the plaintiff with a statement of the

15  complaint's deficiencies. *Karim-Panahi*, 839 F.2d at 623–24.  But where amendment of a

16  pro se litigant's complaint would be futile, denial of leave to amend is appropriate.  *See*

17  *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

18                                    **V.   DISCUSSION**

19         Defendants seek to dismiss Plaintiff's Eighth Amendment conditions of confinement

20  claim against Warden Madden, C/O Flores, and C/O Ramirez arguing that Plaintiff's SAC

21  fails to state a cause of action under the Eighth Amendment in that a leaking air-

22  conditioning unit is not an objectively sufficiently serious harm and because there are no

23  facts to suggest deliberate indifference by any Defendant. (Doc. 30 at 5–8.)  Defendants

24  also seek dismissal claiming Defendants are entitled to qualified immunity because even if

25  a constitutional violation is found, Plaintiff's right was not clearly established. (*Id.* at 8–

26  9.) Plaintiff counters that viable claims exist because Defendants exposed Plaintiff to cruel

27  and unusual punishment by way of unsafe conditions of confinement and each Defendant

28  acted with deliberate indifference to those conditions. (Doc. 29 at 20, ¶ 47.)

1      A.     Eighth Amendment Conditions of Confinement Claim

2          "It is undisputed that the treatment a prisoner receives in prison and the conditions

3   under which [the prisoner] is confined are subject to scrutiny under the Eighth

4   Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*,

5   511 U.S. 825, 832 (1994).   The Eighth Amendment requires that prison officials take

6   reasonable measures to guarantee the safety and well-being of prisoners. *Farmer*, 511 U.S.

7   at 832–833; *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).   "To determine whether

8   the conditions of [a plaintiff's] confinement constitut[e] cruel and unusual punishment, [a

9   court] must assess whether [plaintiff] was deprived of the 'minimal civilized measure of

10  life's necessities.'" *Frost v. Agnos*, 152 F.3d 1124, 1128 (1991) (quoting *Wilson v. Seiter*,

11  501 U.S. 294, 304 (1991)).   The Eighth Amendment analysis consists of both an objective

12  and subjective test.   Under the objective test, a plaintiff must allege facts sufficient to

13  plausibly show that he faced conditions posing a "substantial risk of serious harm" to his

14  health or safety; and under the subjective test, a plaintiff must allege facts demonstrating

15  that the individual prison official was "deliberately indifferent" to those risks. *Farmer*,

16  511 U.S. at 837; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

17          i.     *Objective Test: Exacerbating Condition Requirement*

18          California district courts have held that conditions such as slippery floors, without

19  more, "do not state . . . an arguable claim for cruel and unusual punishment." *Jackson v.*

20  *State of Ariz.*, 885 F.2d 639, 641 (9th Cir. 1989), *superseded by statute on other grounds*

21  *as stated in Lopez*, 203 F.3d at 1130–31.   Even in cases involving hazardous conditions

22  coupled with a prison staff's knowledge or failure to repair such condition, to impose

23  liability under the Eighth Amendment, courts generally require an exacerbating condition.

24  *See, e.g., Wallace v. Sherman*, 1:20-cv-00213 (EPG)(PC), 2020 WL 4193968 (E.D. Cal.

25  July 21, 2020) (dismissing complaint that alleged a leaky roof that prison staff knew of,

26  which caused plaintiff to slip and fall resulting in a head injury, was not an Eighth

27  Amendment violation).   For example, in *Osolinski v. Kane*, 92 F.3d 934 (9th Cir. 1996),

28  where an oven door fell off and burned plaintiff because prison officials failed to make

7

1   repairs, the Court noted plaintiff's failure to allege facts demonstrating that he could not

2   protect himself from the danger. (*Id.* at 938.) The Court found no Eighth Amendment

3   violation as the objective test failed and it ultimately reversed and remanded to dismiss the

4   case on qualified immunity grounds. (*Id.* at 939.)

5       An example of an exacerbating condition includes circumstances where a prisoner

6   is ordered to continue operating equipment, despite the prison's knowledge of its defects

7   or danger. *Morgan v. Morgensen*, 465 F.3d. 1041, 1045 (9th Cir. 2006) (finding prison's

8   order to work dangerously defective printing press would constitute an exacerbating

9   condition); *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir. 1985) (finding inadequate lighting

10   exacerbated safety hazards in prison's occupational areas). Another example of an

11   exacerbating condition includes circumstances where a dangerous condition exists,

12   coupled with past instances of injury involving a handicapped plaintiff. *Frost v. Agnos*,

13   152 F.3d 1124 (9th Cir. 1998). In *Frost*, where a pretrial detainee who wore a leg cast fell

14   multiple times in a slippery bathroom because officials denied him a handicapped-

15   accessible shower, the Court held that the plaintiff could state a Section 1983 claim. *Id.* at

16   1129. The Court reasoned that because plaintiff had fallen and injured himself multiple

17   times while on crutches, this set of facts was distinguishable from *Jackson* where slippery

18   floors by themselves did not constitute cruel and unusual punishment. *Frost*, 152 F.3d at

19   1124; *Jackson*, 885 F.2d at 639.

20       Here, Plaintiff alleges the ceiling leak posed a danger to himself, Adame, and other

21   visitors as the ceiling soaked with water, eroded, and eventually collapsed on Plaintiff and

22   Adame. (Doc. 29 at 17, ¶ 37.) Plaintiff also alleges "inmates are assigned to specific tables

23   where they are to visit with their guest" and Plaintiff claims he "did not have a choice as

24   to where to sit [during] his visit [on August 22, 2015] with [Adame]." (*Id.* at 17–18, ¶¶

25   38–39.) The allegation of being assigned to sit beneath a leaky and/or faulty ceiling rises

26   to the level of an exacerbating condition similar to *Morgan* where the Court found an order

27   to continue operating dangerously defective equipment could constitute an exacerbating

28   condition. *Morgan*, 465 F.3d. at 1045. Defendants attempt to distinguish *Morgan* by

8

arguing that Plaintiff's visit was discretionary, and thus, does not meet the "danger plus" standard.[1]  (Doc. 39 at 1–2)  Specifically, Defendants claim Plaintiff was "not forced to proceed with the visit" and he "voluntarily sat in his assigned seating."  (Doc. 30 at 8.) While Plaintiff's SAC generally alleges he had prior knowledge of the leaky ceiling, the SAC also claims that the ceiling collapsed "suddenly and unexpectedly" such that any voluntary action and/or assumption of the risk argument fails.  (Doc. 29 at 10, 17 ¶¶ 10, 33.)  In any event, Defendants do not deny their prior knowledge and failure to repair the leaky ceiling, nor do they deny that Plaintiff was specifically assigned to sit in the area immediately beneath the leaky ceiling during his visitation on August 22, 2015.  Because Plaintiff's SAC alleges an exacerbating condition to demonstrate a substantial risk of harm, Plaintiff meets the objective test under the Eighth Amendment. *Morgan*, 465 F.3d. at 1045; *Osolinksi*, 92 F.3d at 939.

        *ii.*     *Subjective Test: Deliberate Indifference Requirement*

To demonstrate deliberate indifference, a plaintiff must allege facts sufficient to plausibly show that the defendant both knew of and disregarded a substantial risk of serious harm to his health and safety. *Farmer*, 511 U.S. at 837.  Thus, a plaintiff must allege "the

---

[1] In their Reply, Defendants also attempt to discredit *Morgan* because the opinion was amended upon rehearing and the issue of whether the "danger plus" standard was met could not be resolved on summary judgment. (Doc. 39 at 1–2 (citing *Morgan*, 465 F.3d. 1041).) It is correct that the "danger plus" issue could not be resolved in *Morgan* because contradictory evidence that inmates were permitted to refuse employer orders precluded summary judgment as it presented a genuine issue of material fact. *Morgan*, 465 F.3d. at 1046. However, at the same time, the *Morgan* Court acknowledged that the evidence showed the prison supervisor violated the prisoner's "constitutional right not to be compelled to perform work that endangered his safety and caused undue pain." *Id.* Therefore, the fact that the opinion was amended upon rehearing does not change the instant analysis. In any event, here, Defendants filed a MTD under Rule 12(b)(6) and not a motion for summary judgment, therefore, the undersigned will accept as true "all material allegations of the complaint . . . as well as all reasonable inferences to be drawn from them." FED. R. CIV. P. 12(b)(6); *Navarro*, 250 F.3d at 932 (citing *Cahill*, 80 F.3d at 338).

1     official [was] both . . . aware of facts from which the inference could be drawn that a
2     substantial risk of serious harm exist[ed], and [that] he . . . also dr[e]w that inference." *Id.*
3        Here, Plaintiff alleges that Defendants were aware of the ceiling leak because a
4     visitors' committee notified Warden Madden of the issue on multiple occasions, including
5     a meeting that took place thirty days before the ceiling collapsed on Plaintiff and Adame.
6     (Doc. 29 at 16, ¶ 28.)  Despite the concerns, Warden Madden allegedly failed to take
7     immediate and precautionary measures to prevent injury by not ordering the ceiling's
8     repair.  (*Id.*, ¶ 31.)  Plaintiff also alleges C/O Flores and C/O Ramirez were assigned to
9     CEN's C-Facility visiting room for at least ninety days prior to the incident and visitors
10    and other inmates put them on notice of the leak, but C/O Flores and C/O Ramirez waived
11    the concerns as non-sense and refused to submit a maintenance request.  (*Id.* at 17, ¶¶ 33,
12    37.)  Additionally, Plaintiff alleges both Officers laughed after Plaintiff and Adame
13    reported the incident.  (*Id.* at 11, ¶ 13.)  C/O Flores and C/O Ramirez's alleged conduct is
14    similar to the defendants' conduct in *Robinson v. Prunty*, 249 F.3d 862, 867 (9th Cir. 2001),
15    where the Court found prison officials' alleged awareness and indifference to a serious risk
16    of violent outbreaks, coupled with alleged joking and failure to intervene, demonstrated
17    deliberate indifference. (Doc. 9 at 13.)  Based on the SAC's allegations, it plausibly alleges
18    that Defendants knowingly disregarded the ceiling leak and the risks it posed to inmates
19    seated beneath it.  (*Id.* at 12–13.)  Therefore, Plaintiff alleges sufficient facts to support a
20    cognizable Eighth Amendment claim for deliberate indifference. *See supra* pp. 7–10.
21        Based upon the foregoing, the undersigned respectfully recommends Defendants'
22    request to dismiss Plaintiff's Eighth Amendment claim be **DENIED**.
23       B.    <u>Qualified Immunity</u>
24        The undersigned now turns to Defendants' qualified immunity argument, wherein
25    they allege similar cases did not give Defendants a "fair warning" that their conduct was
26    unlawful. (Doc. 30 at 8–11.)  Plaintiff contends that *Morgan* and *Osolinksi* clearly establish
27    Plaintiff's right to be free from unsafe conditions of confinement which involved
28    dangerous work equipment, rather than dangerous visiting conditions. (Doc. 38 at 17–18);

1  (citing *Morgan*, 465 F.3d. at 1045; *Osolinksi*, 92 F.3d at 939).

2        Qualified immunity shields government officials from liability for civil damages

3  unless their conduct violates clearly established statutory or constitutional rights of which

4  a reasonable person would have known.  *Anderson v. Creighton*, 483 U.S. 635, 638–40

5  (1987).  The U.S. Supreme Court set forth a two-part analysis for determining government

6  officials' qualified immunity defense.  First, the court must consider whether the facts

7  "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the

8  [defendant's] conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201

9  (2001); *see also Scott v. Harris*, 550 U.S. 372, 377 (2007).  Secondly, the court must

10  determine whether that right was clearly established at the time of the challenged conduct.

11  *Katz*, 533 U.S. at 201.

12                  *i.*     *Violation of a Constitutional Right*

13        Plaintiff alleges Defendants were deliberately indifferent to his conditions of

14  confinement after wet and heavy objects from the ceiling fell on him and Adame during

15  visitation.  As explained above, *supra* pp. 7–10, construing Plaintiff's pleadings liberally

16  and affording Plaintiff any benefit of the doubt, Plaintiff's SAC plausibly alleges that

17  CEN's C-Facility visiting room ceiling posed an objectively substantial risk of serious

18  danger to inmates seated beneath it, and Defendants knowingly disregarded that risk.

19  *Karim-Panahi*, 839 F.2d at 623.  Therefore, the first question is answered in the affirmative.

20                  *ii.*    *Clearly Established*

21        However, the undersigned agrees with Defendants that Plaintiff's right to be free

22  from being ordered to sit underneath a leaky ceiling was not clearly established at the time

23  of the alleged events in 2015 for purposes of asserting an Eighth Amendment claim.

24  Although courts have recognized that a dangerous condition with an exacerbating condition

25  contributing to the injury is sufficient to violate the Eighth Amendment, there is no robust

26  "consensus of cases of persuasive authority" providing Defendants a "fair warning" that

27  their conduct was unconstitutional.  *Saucier*, 533 U.S. at 202; *see also Osolinski*, 92 F.3d

28  at 934 (finding no Eighth Amendment claim where plaintiff failed to allege exacerbating

conditions that rendered him unable to provide for his own safety from a defective oven door); *Morgan*, 465 F.3d. at 1041 (finding an Eighth Amendment claim where officials ordered plaintiff to operate a dangerously defective printing press); *Frost*, 152 F.3d at 1124 (finding Eighth Amendment claim where plaintiff, who wore a leg cast, fell multiple times in a slippery bathroom after officials denied plaintiff a handicapped bathroom). Moreover, the above-referenced cases are clearly distinguishable from the instant case as they involve defective devices and slippery floors.

Although the Court need not identify a case dealing with the particular facts to find Defendants' conduct unreasonable, binding precedent at the time of the 2015 incident did not clearly establish Plaintiff's right to be free from being ordered to sit underneath a leaky ceiling. *Anderson*, 483 U.S. at 640. Therefore, a reasonable person in Defendants' positions would not understand that ordering Plaintiff to sit underneath a known ceiling leak would violate Plaintiff's Eighth Amendment right.

Absent binding precedent, the undersigned looks towards other district courts and federal circuits involving leaks to determine whether Plaintiff's right was clearly established. *Lum v. Jensen*, 876 F.2d 1385, 1387 (9th Cir. 1989); *see Gilman v. Woodford*, No. CIV S-05-0337 FCD GGH P, 2006 WL 1049739, at * 1 (E.D. Cal. Apr. 20, 2006) aff'd, 269 F. App'x 756 (9th Cir. 2008) (inmate injured in dormitory because of a leaking pipe failed to state an Eighth Amendment violation); *Washington v. Sandoval*, No. C 10-0250 LHK (PR), 2012 WL 3236306, at *1 (N.D. Cal. Aug. 6, 2012) (granting qualified immunity after finding pre-existing law was not clearly established as to when a slippery floor becomes a sufficiently substantial risk); *McLaughlin v. Farries*, 122 F. App'x 692 (5th Cir. 2004) (per curiam) (concluding that a prisoner's slip and fall on accumulated water from a leaky air conditioning unit, which the defendants knew about and failed to clean up, was an appropriate action for negligence, but not deliberate indifference). Although the above-referenced slip and fall cases are also distinguishable from the instant case, the leaky ceiling posed a similar risk. However, in evaluating Defendants' claim of qualified immunity, the undersigned notes that while the leaky ceiling posed a risk of

12

danger to Plaintiff, pre-existing law was not sufficiently clear to alert Defendants that their conduct was unconstitutional.  Therefore, Defendants are entitled to qualified immunity.

Accordingly, the undersigned respectfully recommends Defendants' motion to dismiss Plaintiff's second amended complaint on qualified immunity grounds be **GRANTED**.

### C.   Leave to Amend

Generally, courts freely grant leave to amend a complaint that has been dismissed. FED. R. CIV. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  "Leave [to amend] shall be freely given when justice so requires." FED. R. CIV. P. 15(a).  It "should be granted 'if it appears at all possible that the plaintiff can correct defect.'"  *Schreiber*, 806 F.2d at 1401 (quoting *Breier v. N.Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 789-90 (9th Cir. 1963)).  Moreover, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . , undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, "the Ninth Circuit has recognized that plaintiffs do not enjoy unlimited opportunities to amend their complaints." *Stone v. Conrad Preby's*, 2013 WL 139939, at *2 (S.D. Cal. Jan. 10, 2013) (citing *McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1996)); *see also Lopez*, 203 F.3d at 1130.

Here, Plaintiff has not requested leave to amend the SAC.  As to Plaintiff's deliberate indifference claim under the Eighth Amendment, allowing Plaintiff to amend the SAC would be futile.  Although Plaintiff alleges sufficient facts to support a cognizable Eighth Amendment claim for unsafe conditions of confinement, Defendants are shielded from liability for civil damages under qualified immunity.  *Supra* pp. 7–10.  Therefore, any additional facts Plaintiff may assert in an amended complaint would be unavailing. Accordingly, it is respectfully recommended that any further requests for leave to amend Plaintiff's complaint be **DENIED**.

1

## VI.   **CONCLUSION**

2      For the reasons discussed, the undersigned respectfully submits this Report and

3  Recommendation to District Judge Larry Alan Burns pursuant to 28 U.S.C. § 636(b)(1)(B)

4  and Local Civil Rule 72.1(c)(1)(e).  For the reasons set forth above, **IT IS HEREBY**

5  **RECOMMENDED** that the Court issue an order approving and adopting this Report and

6  Recommendation, and directing that Judgment be entered **GRANTING IN PART** and

7  **DENYING IN PART** Defendants' motion to dismiss Plaintiff's second amended

8  complaint.  The undersigned further recommends that any further requests for leave to

9  amend Plaintiff's complaint be **DENIED**.

10      It is **ORDERED** that that no later than **January 20, 2022**, any parties to this action

11  may file written objections to this Report and Recommendation with the Court and serve a

12  copy on all parties.  The document should be captioned "Objections to Report and

13  Recommendation."

14      It is further **ORDERED** that any reply to the objections shall be filed with the Court

15  and served on all parties no later than **February 3, 2022**.  The parties are advised that

16  failure to file objections within the specified time may waive the right to raise those

17  objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th

18  Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

19      **IT IS SO ORDERED**.

20  DATE:  January 5, 2022

21

22  HON. RUTH BERMUDEZ MONTENEGRO
    UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

14